[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 20, 2001, the plaintiffs, Leon P. Brown and Juan A. Sanders, filed a four count complaint against the defendants, Clarence Windley (individually and as Most Worshipful Grand Master of Prince Hall Grand Lodge, FAM, Inc.), and Prince Hall Grand Lodge, FAM, Inc. (Grand Lodge), a Connecticut corporation. The plaintiffs allege the following facts in their complaint: The Grand Lodge governs the activities of the masonic member lodges. Windley held the highest leadership position in the organization. The plaintiffs were members of a member lodge. They allege that the defendants arbitrarily and wrongfully suspended and expelled them from the Masonry. In accordance with the Masonic constitution (constitution), they appealed their suspension and expulsion. Although they received a notice that a hearing was scheduled in response to their suspension and expulsion, the defendants cancelled the hearing and did not reschedule it. As a result of their suspension and expulsion, they claim that they are deprived of benefits that ordinarily become available to organization members in good standing within the organization.[1]
CT Page 15018
The plaintiffs allege in the first count (against the Grand Lodge and the Grand Master) that they were harmed by the illegal, wrongful and arbitrary actions of the defendants, in suspending Brown and expelling Sanders from the Masonry, and in not allowing the plaintiffs adequate appeals. In the second count (against Windley, individually), the plaintiffs allege that Windley deliberately and maliciously failed to grant the plaintiffs their appeal rights and that he refused to abide by the Masonic constitution. In the third count (against the Grand Lodge and the Grand Master), the plaintiffs allege that the defendants breached their contractual relationship with the plaintiffs by terminating and suspending them from the Masonry. In the fourth count (against Windley, individually), the plaintiffs allege that Windley deliberately interfered with the plaintiffs' contract rights by terminating and suspending them from the Masonry.
The defendants moved to dismiss the action pursuant to § 10-31 (a) (1), on the ground that the court is without the requisite subject matter jurisdiction to her the matter for the following reasons[2]: (1) the plaintiffs do not have standing to pursue the present matter because they do not have a legal right to be members of the Grand Lodge since it is a voluntary association; (2) the claims raised by the plaintiffs are not judicable; and (3) this actiqn is premature because the plaintiffs have failed to exhaust the available administrative remedies offered to them by the Grand Lodge.
Pursuant to § 10-31 (b), the plaintiffs timely filed a memorandum in opposition to the defendants' motion to dismiss. The plaintiffs argue in opposition that the court does have subject matter jurisdiction to hear the matter because (1) they have standing because their constitution constitutes a contract between them and the organization and that contract has been breached;
(2) their claims are judicable because courts will intervene in the affairs of voluntary organizations if the organizations do not act in accordance with their own by-laws; and (3) their attempts to pursue internal remedies within the organization were fruitless.
"A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . . A motion to dismiss raises the question of whether a jurisdictional flaw is apparent on the record or by way of supporting affidavits." (Internal quotation marks omitted.) Russell v.Yale University, 54 Conn. App. 573, 577, 737 A.2d 941 (1999). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner CT Page 15019 most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) Tooley v. Metro-North Commuter Railroad Co.,58 Conn. App. 485, 491, 755 A.2d 270 (2000)
 I
"The issue of standing implicates this court's subject matter jurisdiction. . . . [W]here a plaintiff lacks standing to sue, the court is without subject matter jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request and adjudication of the issue. . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. . . . Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted, internal parenthesis omitted, quotation marks omitted.) Avalonbay Communities, Inc. v. Orange, 256 Conn. 557,567-68 (2001).
The defendants argue that the court does not have jurisdiction to hear the plaintiffs' complaint because the plaintiffs lack standing. The defendants argue that the Grand Lodge is a voluntary association and because the plaintiffs have neither a "legal nor a legitimate right" to be members of a "voluntary association," they do not have standing to pursue the present matter. Thus the defendants do not dispute that the plaintiffs were members of the organization or that the defendants suspended or expelled them. Instead, they argue that as a matter of law, the plaintiffs cannot demonstrate that they have a legal interest in the subject matter.
In opposition, the plaintiffs contend that they have standing to bring this action pursuant to their contractual relationship with the Grand Lodge. They argue that the association's constitution constitutes a contract between the group and the association's members and that it is binding on the parties unless it is immoral, illegal or contrary to public policy. According to the plaintiffs, the constitution sets forth CT Page 15020 benefits that are available to members in good standing; these benefits have monetary value and are not available to members who have been suspended or expelled. The plaintiffs contend that these benefits are legally protected interests and that the defendants have unfairly deprived them of these interests by expelling or suspending them from the organization. In addition, the plaintiffs argue that because the Grand Lodge is a properly registered corporation within the state of Connecticut, the court has subject matter jurisdiction to review the actions which gave rise to the present complaint.
General Statutes § 38a-598 (6), which applies to fraternal benefit societies, states that "[e]very society shall have the power to adopt a constitution and laws for the government of the society, the admission of its members, the management of its affairs and the fixing and readjusting of the rates of its members from time to time. It shall have the power to change, alter, add to or amend such constitution and laws and shall have such other powers as are necessary and incidental to carrying into effect the objects and purposes of the society."[3] In addition, § 38a-607
stipulates that "[t]he constitution and laws of the society may provide that no subordinate body or any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society. Such provisions shall be binding on the society and every member and beneficiary of a member." This language suggests that organizations not only have considerable latitude when determining their internal functions but that they are also, to a great extent, self determining when it comes to their internal functions. In deference to organizations' authority to structure and monitor themselves, courts will first look to their particular bylaws to see if the actions in question were in accord with the bylaws. In addition, case law suggests that courts are reluctant to review the actions of voluntary associations, fraternal organizations, or non-stock corporations. SeeSterner v. Saugatauck Harbor Yacht Club, Inc., 188 Conn. 531, 537,450 A.2d 369 (1982). "Courts must tread lightly when faced with claims of this kind. A substantial amount of deference is owed to members of private nonstock corporations who make decisions of this sort under review here. Judges must avoid the temptation to intrude their own sensibilities into these situations in the absence of a strong, clear need to do so."Davenport v. Society of Cincinnati in the State of Connecticut,46 Conn. Sup. 411, 446, 26 Conn. L. Rptr. 153 (1999).
Courts will intervene, however, if intra-organization actions run counter to the bylaws of that organization's own constitution. In Fuscov. Sons of Italy in America, 104 Conn. 157, 132 A. 456 (1926), the defendant-fraternal organization's bylaws specified that a member who neglected to pay dues would be automatically suspended from the organization's mortuary fund, and in the event of death, be deprived of CT Page 15021 benefits. At issue was not whether the bylaws themselves were unreasonable, only the manner in which the benefits were lost. The court held that the plaintiff had a right to his benefits, despite the fact that he had inadvertently neglected to make a payment. Id., 164. Similarly, in Sterner v. Saugatauck Harbor Yacht Club, Inc., supra,188 Conn. 531, the court found that the actions of the board of a yacht club were arbitrary and unreasonable under the circumstances because the board had expelled a member for walking over the hood of a car owned by another member. The court pointed out that even when the bylaws themselves are reasonable, if an organization carries them out in an unreasonable manner, the court can intervene. Id., 537.
Thus, a plaintiff may have standing to bring a breach of contract claim against a fraternal organization when the organization fails to follow its internal rules and procedures. In the present case, the plaintiffs were members of an organization and claim that the organization failed to follow its own rules and procedures, which resulted in a deprivation of their benefits. Thus they have demonstrated that they have a personal legal interest and that the defendants' action injuriously affected this interest. The court finds, therefore, that the plaintiffs have standing to bring this matter.
 II
The defendant argues that because of the voluntary nature of the Grand Lodge, its internal disputes are not subject to resolution through litigation and, therefore, the plaintiffs' claims are not judicable. Essentially, the defendant argues that the present case involves internal disciplinary measures that were properly invoked by the Grand Master of this fraternal society.
The plaintiffs counter that although the general rule is that a court will not interfere with the actions of an association in suspending or expelling a member, it may do so when such actions are wrongful. The plaintiffs are correct on both points. Courts have declined to be too involved in the affairs of voluntary organizations on constitutional grounds. "Any discussion of applicable legal principles must begin with recognition of the fact that the freedom of persons to associate with others sharing common goals, beliefs, and interests is of a constitutional dimension. . . . We have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. . . ." (Citations omitted, internal quotation marks omitted.)Davenport v. Society of the Cincinnati in the State of Connecticut,
supra, 46 Conn. Sup. 429-30. CT Page 15022
But organizations are not entirely immune from judicial review. In some instances, courts will balance an organization's right to autonomy with the need for judicial supervision. Case law makes the principle clear: "[t]he decisions of any kind of a voluntary society or association, in admitting members, and in disciplining, suspending, or expelling them, are of a quasi judicial character. In such cases the courts never interfere, except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society; whether or not the proceeding was in good faith; and whether or not there was anything in the proceeding in violation of the laws of the land. If found that the proceeding was had fairly, in good faith and pursuant to its own laws, and that there was nothing in it in violation of any law of the land, then the sentence is conclusive like that of a judicial tribunal." Connelly v. Masonic MutualBenefit Assn., 58 Conn. 552, 557, 20 A. 671 (1890).
Because the plaintiffs have shown that there is a possibility that the procedures that the society applied to them may not have been pursuant to the organization's own bylaws, the plaintiffs' claims are judicable.
 III
The defendants contend that the plaintiffs failed to exhaust the internal remedies provided them by the organization and therefore, this action is premature. Specifically, the defendants claim that the plaintiffs failed to attend a scheduled meeting with the appeals committee or a Grand Lodge meeting. According to the defendants, Connecticut courts have determined that they do not have subject matter jurisdiction if the plaintiff has failed to invoke internal remedies, unless the internal remedies would be futile. The plaintiffs counter that they attempted to use internal remedies but were stymied by the organization's flagrant disregard for its own rules and procedures. The defendants rely on the exhaustion doctrine.[4] "The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . [W]e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate." (Citations omitted, internal quotation marks omitted.)Fish Unlimited v. Northeast Utilities Service Co.,254 Conn. 1, 13, 756 A.2d 262 (2000). "An administrative remedy is futile or inadequate if the agency is without authority to grant the relief requested." Id., 14.
A well established body of Connecticut law defines the courts' role in regard to administrative appeals. It is less established that the courts have a similar role in regard to voluntary organizations, but they do CT Page 15023 appear to step in where an organization has violated its bylaws. Courts will initially defer to an organization's bylaws and procedures.McGuinness v. Court Elm City, Foresters of America, 78 Conn. 43, 47,60 A. 1023 (1905). Courts, however, will intervene if remedies provided by the organization are to no avail. Gervasi v. Societa GiusippiGaribaldi, 96 Conn. 50, 60, 112 A. 693 (1921). Such intervention is in keeping with judicially recognized exceptions to the exhaustion doctrine. "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency. . . ." (Internal citations omitted.)Fish Unlimited v. Northeast Utilities Service Co., 254 Conn. 1, 12,756 A.2d 262 (2000).
In the present case, the defendants have failed to provide evidence that the plaintiffs failed to exhaust internal remedies available to them. Therefore, their motion to dismiss on the ground of exhaustion is denied.
 CONCLUSION
In conclusion, the court concludes that because the plaintiffs (1) have standing; (2) their claims are judicable; and (3) the defendants have failed to show that administrative remedies were available to the plaintiffs and that the plaintiffs failed to exhaust these remedies, the defendants' motion to dismiss the plaintiffs' complaint on the ground that the court lacks subject matter jurisdiction is denied.
Skolnick, J.