SAMUEL G. GARDNER *vs.* THE EAST ROCK LODGE, No. 141, I. B. P. O. E. OF W., INCORPORATED.

Third Judicial District, Bridgeport, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

The by-laws of a fraternal order for its subordinate lodges provided, in one article, for offenses and trials of members, and in another article, for appeals from "questions arising in lodges," giving either party the right to appeal from adverse decisions, first to the presiding officer of the lodge, then to the lodge itself, and then, through various stages, up to the grand lodge at its annual meeting. *Held* that the right of appeal was sufficiently broad to include an appeal by a member from an order of suspension made against him by a lodge.

Where a member of a fraternal order is entitled to an appeal for redress of his grievance to tribunals provided within the order, he must so appeal, at least so far as concerns disciplinary measures taken by a lodge of the order against him, and within its jurisdiction, before seeking his remedy in the courts.

Gardner *v*. East Rock Lodge.

Where, however, the judgment of the lodge is not within the jurisdic-
tion given it by the constitution and by-laws of the order, deter-
mined on the same principles as the jurisdiction of inferior courts,
its action is void, and no appeal within the order is necessary as a
prerequisite to the bringing of a legal action.

In the present case the by-laws of the order fixed the penalties which
might be inflicted by a lodge for offenses committed by members,
as reprimand, suspension for a definite term, expulsion, and fine
not exceeding $5. The lodge passed an order suspending three
members until they paid in full a certain sum made up of amounts
claimed to be due it from each. *Held* that this order was in effect
the attempted exercise of coercion to compel speedy payment,
rather than a penalty of exclusion for misconduct under the laws
of the order, that it was not erroneous merely, but was void from
the start, and hence that there was nothing to appeal from.

The case of *McGuinness* v. *Court Elm City*, 78 Conn. 43, explained
and limited.

Argued October 26th, 1920—decided April 20th, 1921.

SUIT to restrain the defendant fraternal society from
depriving the plaintiff of the privileges and advantages
of membership therein, for other equitable relief, and
for damages, brought to the Court of Common Pleas in
New Haven County where a demurrer to the com-
plaint was overruled and the cause was afterward tried
to the court, *Simpson, J.;* facts found and judgment
rendered for the defendant, from which the plaintiff
appealed. *Error.*

*Harrison Hewitt* and *Charles E. Clark*, for the appel-
lant (plaintiff).

*William B. Ely*, for the appellee (defendant).

GAGER, J. Prior to May 18th, 1917, the plaintiff had
for many years been a member of the defendant lodge,
a subordinate lodge of an order known as Improved
Benevolent Protective Order of Elks of the World, hav-
ing a Grand Lodge and subordinate lodges throughout
the United States, and existing to promote the welfare

and happiness of its members, to perpetuate itself as a fraternal organization, and to protect and assist its members and their families. On and after May 18th, 1917, plaintiff was suspended by defendant, following acts claimed to warrant his suspension, deprived of all privileges of membership, such as access to and use of the clubrooms, receipt of sick benefits, and the like. He thereupon brought this action, claiming an injunction, (1) prohibiting the defendant from refusing to allow him access to the rooms of said society, participation in its said meetings, or the rights to enjoy the privileges and advantages of being a member of this society; (2) compelling the defendant to restore plaintiff to all the rights, privileges and advantages of the membership in the society; (3) $1,000 damages; (4) such other relief as equity might require.

The trial court found the charges upon which plaintiff had been tried and suspended unfounded, and the action of the lodge against him improper and erroneous, but held that he could not recover in this action, since, as was admitted, he had not attempted first to seek redress by appeal within the order—had not exhausted the remedies provided by the order.

The first question upon the finding of the court is, then, whether, under the rules of the order and the circumstances of the case, the plaintiff was bound to exhaust, by appeal, the remedies provided in the order before applying to the courts. The constitution and laws governing subordinate lodges provides:—

"Article XI.

Decisions, Opinions, Appeals, Etc.

"Section 1. Questions arising in lodges shall in the first instance be decided by the lodge, the Exalted Ruler rendering the decision of the same, either party having the right to appeal from adverse decisions upon subjects as follows:

"(1) From the Exalted Ruler's decision to the judgment of the lodge, a two-thirds ($^2/_3$) vote being required to overrule such decision.

"(2) From the decision of the lodge to that of the District Deputy.

"(3) From his decision to that of the Grand Exalted Ruler.

"(4) From the Grand Exalted Ruler's decision to the Committee on Appeals and Grievances, which will report its findings to the Grand Lodge at its next annual session.

"In all appeals of this kind, except that under the first heading, a brief written record of the facts in the case must be presented by the appealing party and an opportunity given, with due trial to the adverse party, for a written statement in reply."

Article XIII, offenses and trials, defines the offenses which subject the individual to trial and punishment. Section one is as follows: "(a) Offenses against statutory law. (b) Offenses at common law, such as misrepresentation and fraud. (c) Offenses against the moral law, not punishable as crime. (d) Offenses against the constitution and laws of the order. (e) Offenses genererally, which involve violation of obligation."

In § 6 of Article XIII, the penalties provided are as follows: "(a) Reprimand or censure in open lodge. (b) Suspension for a definite time. (c) Expulsion. (d) Fine not exceeding five ($5) dollars."

In Article XIII are also provisions as to the procedure, which are not now of consequence. This is all that is contained in the constitution and laws with reference to trials and appeals. A ritual for the use of the subordinate lodges is also provided, which, in the obligation undertaken by a member, requires the new member to swear, *inter alia*, "that I will never appeal to the courts to right a supposed or imaginary wrong without first appealing to the counsels of the order."

Deferring other points raised by the appeal, we will first consider this one of failure to exhaust the right of appeal within the order. The case relied upon to sustain the ruling of the trial court is *McGuinness* v. *Court Elm City*, 78 Conn. 43, 60 Atl. 1023. In that case the society had a by-law specifically providing: "A member shall not resort to the civil courts for redress for an alleged injury until he has exhausted every means of appeal in the order. The penalty of noncompliance with this law shall be expulsion from the order." The by-laws of that society further provided that any aggrieved party, failing to take an appeal from any such action or decision, should be bound thereby "and shall have no further recourse whether in law or in equity in respect to the subject-matter of such action or decision." This court held that the by-law was valid and binding upon the member, and stated the rule in these words, page 47: "In cases like the present the general rule is that a failure to exhaust the remedies provided by the laws of the order, for the redress of injuries of the kind complained of in this case, is a bar to relief for such injuries in the courts." A number of authorities are cited. It is to be noted, however, that the *McGuinness* case is not necessarily decisive of the case now before the court, for that was one in which by the by-laws there was an express agreement to exhaust every means of appeal in the order before appeal to the courts. The present case contains no agreement, unless it is to be implied. In the quotation from the constitution and by-laws set out above in Article XI, after providing that questions arising in lodges shall in the first instance be decided by the lodge, the provision is: "Either party having the right to appeal from adverse decisions upon subjects as follows "—and then the successive appeals are designated. In Article XIII, relating to offenses and trials, no reference is made to appeal, and

we neither find nor are referred to any other provision as to appeal, except that in the ritual there appears the provision above quoted with reference to never appealing to the courts without first appealing to the counsels of the order. It is claimed by the defendant that this last part of the initiation obligation or oath is the equivalent of the agreement in the by-law in *McGuinness* v. *Court Elm City*, 78 Conn. 43, 60 Atl. 1023. We have no occasion to pass upon this point, in view of our conclusion as to the rights and obligations created by Article XI, as hereafter stated.

The question, however, returns, whether, under Article XI, the right of appeal there given in effect creates an obligation to appeal before taking the case to the civil courts, or is permissive merely. The defendant treats it as creating a duty which must be fulfilled before appealing to the courts, as is held in the *McGuinness* case, while the plaintiff treats it as simply permissive, and therefore creating no obligation disabling a member from appealing from any decision in the order direct to the courts.

In connection with this point the plaintiff first claims that the right of appeal under Article XI does not refer at all to trials under Article XIII, under which the proceedings in this case come. Referring again to Article XI, set out in full, *supra*, we find that the matters therein stated as the proper subjects of appeal are "questions arising in lodges." The plaintiff contends that this is not apt language as descriptive of a trial of the member for the purpose of discipline under Article XIII, and that, in view of the references in Article XI to parties and adverse parties, the questions for which appeal is provided must be controversies between members or parties within the lodge brought before the lodge for settlement, and not to a trial of members for offenses against the lodge or the order. We think,

however, that plaintiff's construction of Article XI is too narrow, and that the language, "questions arising in lodges," is broad enough to be construed, and should be construed, as referring to any subject-matter which may properly come before the lodge for its action. It is to be admitted that the language used is not as clear and definite as that used in reference to appeals within the order in most benevolent associations to which our attention has been called; but we think the natural interpretation, and that which would first occur to the layman intending to join the lodge, is that the provision for appeal is intended to be, and should be held to be, inclusive of all matters coming before the lodge, and especially in view of the fact that nowhere is it provided that the result of the first hearing shall be final and conclusive.

But the plaintiff insists that, even if the language of Article XI is broad enough to cover disciplinary proceedings, an appeal is permissive only, and not obligatory, and that his failure to appeal from the decision adverse to him to the tribunal provided within the lodge, will not defeat his resort to the courts. "Either party having the right to appeal," the plaintiff says, in the total absence of any agreement prohibiting resort to the courts until after exhausting all means of appeal within the order, as in the *McGuinness* case, *supra*, leaves it optional with him whether to pursue his remedies within the order or go in the first instance to the courts. The general rule is well stated in Bacon, Life & Accident Insurance, §§133, 624 and 625, in substance as follows: "It is a well-established rule that before resorting to the civil courts for redress a member must exhaust all the remedies provided by the society by appeal or otherwise." In Niblack, Benefit Societies (2d Ed.) § 47, it is said: "Courts will not in any wise interfere with, or inquire into the affairs of such a society until they are

obliged to act, and until the aggrieved member has exhausted all the remedies provided in its laws. It is not necessary that its [defendant's] laws shall provide in express terms that the member must appeal from the decision expelling him to a higher tribunal in the society, before seeking restoration by a court of justice; the mere right to appeal from such decision, for the reasons just stated, creates a duty on the part of the expelled member to exhaust his right of appeal in the society." The authorities fully sustain this position. *Correia* v. *Portuguese Fraternity*, 218 Mass. 305, 105 N. E. 977; *Karcher* v. *Supreme Lodge K. of H.*, 137 Mass. 368; *Hickey* v. *Baine*, 195 Mass. 446, 81 N. E. 201. The duty arises from the member's implied obligation to abide by the laws; and the right of appeal, being a privilege incident to each decision, carries with it the obligation to exercise this right in the manner provided by the society, if the member deems himself aggrieved by the decision. The rule in question does not absolutely act as a final result in prohibiting members from resorting to courts, but, as said in the *McGuinness* case, *supra*, it "prohibits them from so doing until they have exhausted the ample remedies provided for the redress of such grievances by the laws and rules of the order." See 7 Corpus Juris, article "Beneficial Associations," §§ 83, 84, where the authorities are collected; among them the opinion of *Judge Perry* in *Mead* v. *Sterling* in the Fairfield County Court of Common Pleas, reported in the appendix to 62 Conn. 586, and in 23 L. R. A. 227. This is a valuable discussion of the point which is now under investigation, and was undoubtedly incorporated with the reports because we then had no considered authority on this subject.

It must be borne in mind that the courts have developed a sharp distinction in the application of this rule of exhaustion of remedies. Where the case is one

to enforce property rights of a member against the society, and the laws of the society provide a remedy within the order, but do not in terms compel resort to it before beginning civil action, the courts are in conflict. Where the case is one to enforce other rights of a member against the society, and the laws of the society do provide such remedy, and in terms compel resort to it before beginning civil action, or is a case arising out of disciplinary measures taken by the society, the courts compel resort to the remedy provided by the laws of the society except in certain cases constituting well-defined exceptions to the general rule. The authorities are collected in 3 Amer. & Eng. Anno. Cases, 212; 49 L. R. A. 383; and 52 L. R. A. (N. S.) 817, 823.

In the present case, which is not a case where the charges involve property rights, but relates to discipline and damages as the incidental result of the unlawful infliction of discipline, the mass of decisions directly involving property rights are of little weight. It appears from the text-books and the cases we have referred to, that it is undoubtedly the general rule that the remedies in the order must be exhausted before resorting to a civil court for relief from a disciplinary decision. This is in harmony with the reasoning in the *McGuinness* case, *supra*, although there the plaintiff had bound himself by the express terms of the laws of the order.

But the plaintiff further claims that, conceding the general rule to be as just stated, still it does not apply in the present case, because the judgment within the lodge was absolutely void. It is true that in the *McGuinness* case the court said: "We think that the injury of which he complains in this case (even if we assume that the sentence imposed was in a certain sense void) was one for the redress of which he was bound to resort to the tribunals of the order before coming into the courts." This opinion does not enlighten us as to the extent of

the meaning of "in a certain sense void." Perhaps there was no occasion. An examination of the present record shows that the lodge had no jurisdiction to impose the penalty it adopted, or any part of it. In the first complaint three members of the lodge, to wit, the plaintiff, Tolliver, and Johnson, were together complained against under Article XIII, subsections (d) and (e), *supra*, in two complaints, omitting the formal parts: "On August 18, 1916, three checks were drawn for $20 each to Brothers H. G. Tolliver, Thomas H. Johnson and Samuel Gardner, respectively. There is no record in the minutes of the regular meeting of the Lodge to show authority for said transaction. There is no record of any drafts for the same. We find no record which shows this to be a legal and bona fide transaction, and all of which we submit should be dealt with as the general laws of the order direct." It is very doubtful if any definite charge for which the members can be held responsible is here stated. It is by no means certain that because some statement did not appear of record, that the transaction referred to was not legal and bona fide. We do not, however, decide this case on technical fault in pleading, for the judgment rendered on the pleading is the vicious thing.

The second complaint was as follows: "Pursuant to the laws of East Rock Lodge, and because of a request made to Brothers H. G. Tolliver, Thomas H. Johnson and Samuel Gardner, at a regular meeting, held February 2, 1917, to turn over to the Lodge all records, papers and property in their possession representing the property at 59 Dixwell avenue, to enable the Lodge to have said property legally conveyed to it, and because they failed to comply with this request the Lodge was compelled to take legal steps to obtain the same at great expense to the Lodge. We, therefore, charge them with being responsible to the Lodge for all of said expense."

After a somewhat irregular hearing, the committee to which both charges were preferred presented to the lodge a report and resolution, which was passed, as follows:—

"New Haven, Conn., May 24, 1917.

"Whereas, in the report of the trial committee appointed by the Exalted Ruler of East Rock Lodge, 141, I. B. P. O. E. of W., Inc., to try Brothers H. G. Tolliver, Samuel Gardner and Thomas H. Johnson on charges preferred against them by the board of trustees of said Lodge. They were found guilty. We recommend the following resolution. Therefore, be it resolved that Brothers H. G. Tolliver, Samuel Gardner and Thomas H. Johnson stand suspended from East Rock Lodge until they shall have paid to the Lodge in full the sum as follows:

"August 18, 1916, money drawn from treasury illegally according to general laws of Elkdom $60.00

"Counsel fees through failure of brothers to live up to oath and obligations     75.00

$135.00

"Interest lost of $700 at 4 per cent for four months through failure of the brothers to keep word with counsel     9.34

"Making a total of     $144.64

"This being the amount represented in the charges preferred against them and for the expenditure of which they are held responsible by the Lodge. And be it further resolved that this resolution shall take effect upon its passage."

The ultimate conclusion of the trial court on these charges is stated in the finding as follows: "The court was also of the belief, as stated in its memorandum of decision, that the committee acted erroneously and

improperly in passing the vote of suspension which it did. The court was of the opinion, however, that this was a mere irregularity and fell within the ruling in the case of *McGuinness* v. *Court Elm City,* 78 Conn. 43 [60 Atl. 1023]."

We think the trial court erred in holding that the vote of suspension was a mere irregularity, and therefore did not excuse the plaintiff from taking an appeal within the order. It was void as not within the jurisdiction of the lodge. This jurisdiction was strictly limited by Article XIII. The charges are claimed by the lodge to have been based on § 1, subsection (d), "offenses against the constitution and by-laws of the order; (e) offenses generally, which involve violation of obligations."

Jurisdiction is the lawful power to hear and determine. Assuming, for the purposes of this case, that the charges were properly brought, properly stated in the written complaint, and properly tried as the court finds, an examination of the decision, which is set out in detail, discloses that in no respect whatever was it within the powers granted to the lodge as enumerated in Article XIII, § 6. The penalties therein provided, and which limit and determine the jurisdiction of the lodge, are: (a) reprimand or censure; (b) suspension for a definite time; (c) expulsion; (d) a fine not exceeding $5. The resolution expressing the judgment, as set out above, discloses that in no single particular provided in § 6, which is the only source of authority for determining penalties, has the power granted been exercised. There is no reprimand, no suspension for a definite time, no expulsion, no fine; the sentence is that each of the members be suspended until he shall pay to the lodge a sum of money claimed to be due the lodge, amounting, against the three members combined, to $144.64. It is in effect a money judgment, the $60 being made up of

$20, which is claimed to have been received illegally by each of the three accused, $75 for expenses incurred by the society as the result of their jointly not turning over certain property upon request, and $9.34, claimed to have become due as interest upon a loan, secured by the property in question. Moreover, while purporting to be an exercise of disciplinary power against each of the three charged, of whom the plaintiff was one, the judgment runs against all three of them without distinction as to the whole amount found due as a result of the acts of the three. The lodge was never authorized to sit as a court of law to adjudicate upon the recovery of money from its members. Each was ordered to pay the claim against all, and the order of suspension, instead of being for a definite time, and so a penalty, was to expire upon payment of the claim, and was in effect the attempted exercise of coercion to compel speedy payment, rather than a penalty of exclusion for misconduct under the laws of the society. Such a judgment was not erroneous merely, it was void from the start, and there was nothing to appeal from.

The jurisdiction of the order must be determined on the same principles as the jurisdiction of inferior courts. In 1 Black on Judgments (2d Ed.) § 242, it is said: "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials. First, the court must have cognizance of the class of cases to which the one to be adjudicated belongs. Second, the proper parties must be present. And third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter

decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment." *Curran* v. *O'Meara*, 211 Mass. 261, 268, 97 N. E. 907; *Hoeffner* v. *Grand Lodge*, 41 Mo. App. 359.

In *Mulroy* v. *Knights of Honor*, 28 Mo. App. 463, in commenting on the rule requiring that a member shall exhaust his right of appeal in disciplinary matters, the court said (p. 469): "But all cases which so hold either expressly state, or tacitly assume, that, in the action which the society took, and against which relief was sought, it acted within the scope of its powers, and in prosecuting their inquiries into the propriety of the action of such societies in the expulsion of members, or in the disposition of property, or otherwise, courts have in general proceeded no further than to inquire whether the judicatory provided by the laws of the society, which acted, had jurisdiction in the particular case." In *People* v. *Order of Foresters*, 162 Ill. 78, 83, 44 N. E. 401, it is said: "The weight of authority seems to be in favor of the position, that the obligation to take the appeal allowed by the laws of the society does not exist where the judgment is void for want of jurisdiction." See Niblack, Benefit Societies (2d Ed.) § 47; *Langnecker* v. *Trustees of Grand Lodge*, 111 Wis. 283, 87 N. W. 293.

From this review of the judgment rendered by the society, we think it very clear that there was an entire want of jurisdiction to render any such decision at all, and that it was not a mere erroneous exercise of jurisdiction. The lodge had no power to hear and determine the question of what the plaintiff might be under legal obligation to pay to the lodge, and no power to impose a penalty of indeterminate suspension under any circumstances, much less an indeterminate suspension continuing only until payment to the lodge of the

amount of the judgment as a method of enforcing payment. *Terry's Appeal,* 67 Conn. 181, 34 Atl. 1032; *Cantoni* v. *Betts,* 70 Conn. 386, 39 Atl. 604.

The action of the lodge was void, and no appeal was necessary as a prerequisite to bringing the action. In holding otherwise, the trial court was in error. Other grounds of appeal were made by the plaintiff, but the conclusion already reached renders their discussion unnecessary.

There is error, the judgment of the Court of Common Pleas is set aside and the cause remanded to that court to be proceeded with according to the views herein expressed.

In this opinion the other judges concurred.